Brody Valerga (11789)
Heather Valerga (14431)
**VALERGA LLP**
1042 Ft Union Blvd #1019
Midvale, UT 84047
(801) 836-0880
brody@valergalawyers.com
Attorney for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HUNTER BOODY,<br><br>    Plaintiff,<br><br>  v.<br><br>CENTRIFY CORPORATION<br><br>    Defendant. | **COMPLAINT FOR EMPLOYMENT DISCRIMINATION**<br><br>Civil No. 2:18-cv-00841-BSJ<br><br>Judge: Bruce S. Jenkins<br><br>Jury Demand – Yes |

1. Hunter Boody (Hunter) brings this action against Centrify Corporation (Centrify) for employment discrimination, failure to hire, when they denied him employment because of his stutter disability.

### **JURISDICTION**

1. Hunter brings this action for discrimination in employment under the Americans with Disabilities Act of 1990, as codified, 42 §§ 12111 to 12117. Hunter filed a charge with the Equal Opportunity Commission regarding Centrify's discriminatory conduct on October 23, 2017.

2. The EEOC issued a Notice of Right to Sue letter on August 31, 2018.

3. Venue is proper in this District under 28 U.S.C. § 1391.

### **PARTIES**

4. Hunter resides in Utah County, Utah.

5. Centrify is a corporation duly organized and existing under the laws of the State of Delaware, with its headquarters in Santa Clara, California.

6. Hunter sought employment at Centrify's Murray, Utah location on 5295 S Commerce Dr #400 SLC, UT 84107.

## FACTUAL ALLEGATIONS

7. Hunter applied for a position as a Technical Support Engineer CSS.

8. Hunter had a first interview with hiring manager Hubert Sigler on September $12^{nd}$ 2017.

9. At the beginning of the interview, Hunter indicated that he had a stutter and that it wouldn't hold him back from his job performance, communicating with customers, and his team. In fact, he was taking more calls and interacting with more people at his current job at the time.

10. Hunter then had a second interview with Chanse Mears on September 13th 2017.

11. On September 15th 2017, Hunter received an email notifying him that he was not selected for the position.

12. Hunter then sent an email asking for feedback as to why he did not receive the job. His email stated: "I am always looking to improve is there anything I can do to better my chances in the future?"

13. Several days later, Mr. Sigler responded in an email dated September 19, 2017, which read: "Since you asked I'm happy to offer some guidance for the future.  One of the major factors for us is that unlike Stephen Wall you had no prior internship directly involving Linux on your resume.  Your internship experience was more desktop oriented and only had light AD exposure.  Although you both have degrees from the same university Stephen had put his knowledge to more direct use which allowed him to recall more information during his technical phone screen.  The other major factor was your noticeable stutter.  I do regret this being a factor however as the position requires interaction with external facing customers we had to consider

this in our decision.  My recommendation is to seek positions that don't require or emphasize external customer interaction. I hope that is helpful."

14.  Hunter was shocked at the response. He was emotionally devastated that Mr. Sigler would bring up his stutter as the major factor in failing to land the job, and then advise him not to seek positions that are customer facing. Hunter had never before been told that he couldn't perform a job because of the stutter he was born with. At his previous job he was taking 20 plus phone calls per day, which was more than the job he applied for at Centrify.

15.  Hunter's self-esteem and self-worth were damaged as a result of Mr. Sigler's email. Hunter was depressed and his confidence was shaken. Hunter had trouble sleeping and suffered other mental anguish.

16.  Several weeks after being notified of their discriminatory conduct, Centrify did interview and eventually hire Hunter for a different position but at a lower rate than his colleagues.

17.  Upon information and belief, the candidates that were hired instead of Hunter for the Technical Support Engineer CSS had equal or less experience and qualifications than Hunter.

## **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

18.  Hunter is a qualified individual within the meaning of 42 U.S.C § 12111(8) in that he has a disability—a stutter, Centrify perceived him to have a disability, he has the requisite education to perform and can perform the essential functions of a Technical Support Engineer CSS, and he desired to hold a position as a Technical Support Engineer CSS.

19.  Centrify is an "employer" within the meaning of 42 U.S.C § 12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is also a covered entity within the meaning of 42 U.S.C § 12111(5).

20. Hunter was an employee, or prospective employee within the meaning of 42 U.S.C § 12111(4).

21. At the time Centrify failed to hire Hunter, he was qualified for employment as a Technical Support Engineer CSS.

22. On September 15, 2017, due to Hunter's actual or perceived disability, Centrify failed to hire him. 42 U.S.C. § 12112(a). Specifically, Centrify's discriminatory actions included, but were not limited to (1) limiting, segregating, or classifying Hunter in a way that adversely affected his opportunities or status because of his actual or perceived disability within the meaning of § 12112(b)(1); (2) utilizing standards, criteria, or methods of administration and hiring that have the effect of discrimination on the basis of disability within the meaning of § 12112(b)(3)(A); (3) not making reasonable accommodations for the known physical limitations of Hunter, an otherwise qualified individual with a disability who was an applicant, despite the fact that doing so would not impose an undue hardship on the operation of Centrify's business within the meaning of § 12112(b)(5)(A); (4) denying employment opportunities to Hunter based on Centrify's need to make reasonable accommodations for his physical impairments within the meaning of § 12112(b)(5)(A); and (5) using qualification standards, employment tests, or other selection criteria that screened out or tended to screen out individuals with disabilities, despite the fact that doing so was not consistent with business necessity, within the meaning of § 12112(b)(6).

23. Hunter has been damaged by Centrify's violation of the ADA inasmuch as Hunter was out of work for a period of time and unable to use his education and training as he had completed a Bachelors in Information Technology and IT work experience, and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

24. Hunter is entitled to his attorney's fees and costs incurred in this matter under 42 U.S.C. § 12205.

25. Hunter is further to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Hunter prays for judgment as follows:

(A) For an award of damages in an amount to be determined at trial, together with interest, costs of suit, attorney's fees, and all other such relief as the Court deems just and proper;

(B) That Defendant be enjoined from failing or refusing to take appropriate nondiscriminatory measures to overcome the effects of the discrimination.

Date: October 29, 2018                                           /s/ Brody Valerga
                                                                             Brody Valerga